IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARTINA T. RICCARDI,                          1:12-cv-01833-BR

            Plaintiff,                        OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

            Defendant.


**ALAN STUART GRAF**
Alan Stuart Graf, P.C.
208 Pine St.
Floyd, VA 24091
(540) 745-2519

**KATHRYN TASSINARI**
**BRENT WELLS**
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

            Attorneys for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN ANN MILLER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

       Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Martina T. Ricciardi seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act.[2]

      This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with

---

    [2]  The record reflects Plaintiff also filed a Title II application for Supplemental Security Income on April 1, 2009, which was initially denied and which Plaintiff did not pursue further.  Tr. 15.

2 - OPINION & ORDER

this Opinion and Order.


## ADMINISTRATIVE HISTORY

Plaintiff filed her application for SSI on July 13, 2009. Tr. 12.  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a video hearing on July 27, 2011.  Tr. 12.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 12.

The ALJ issued a decision on August 26, 2011, in which he found Plaintiff is not entitled to benefits.  Tr. 23.  That decision became the final decision of the Commissioner on August 9, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.


## BACKGROUND

Plaintiff was born on April 8, 1965, and was 46 years old at the time of the hearing.  Tr. 21.  Plaintiff completed high school.  Tr. 21.  Plaintiff has past relevant work experience as a hair stylist.  Tr. 21, 186.

Plaintiff alleges disability since July 14, 2009, due to an injury from a snowboarding accident in 1999 and degenerative disc

disease.[3]  Tr. 12, 141.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 14-23.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

---

[3]  Plaintiff provided an alleged onset date of March 16, 1999, in her application, but at the hearing the ALJ accepted Plaintiff's request to amend her alleged onset date to July 14, 2009.  Tr. 12, 48, 141.

supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a "mere scintilla" of evidence
but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d
at 690).

     The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## <u>DISABILITY ANALYSIS</u>

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(I).  *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in

the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also*
*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.*
*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged
in substantial gainful activity since July 14, 2009, her alleged
onset date.  Tr. 14.

At Step Two the ALJ found Plaintiff has the severe
impairments of degenerative disc disease of the lumbar spine,
bipolar disorder, and anxiety disorder.[4]  Tr. 14.

At Step Three the ALJ found Plaintiff's impairments do not
meet or equal the criteria for any impairment in the Listing of
Impairments.  Tr. 15.  The ALJ found Plaintiff has the RFC to

---

[4] The Court notes the ALJ based his findings as to these
impairments on the medical diagnoses of Plaintiff that appear in
the record rather than statements in Plaintiff's applications.
*See* Tr. 14, 141.

perform light work except that Plaintiff "is further limited to unskilled work involving no more than occasional climbing of stairs or ramps; no climbing of ladders, ropes, or scaffolds; no more than frequent balancing; no more than occasional stooping, kneeling, crouching, and crawling; no more than occasional overhead reaching with either arm; and no more than occasional dealings with the public."  Tr. 17.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work.  Tr. 21.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as office helper, mailroom clerk, or address clerk.  Tr. 22. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred (1) by improperly rejecting the opinions of treating physician Douglas McMahon, M.D., and examining physician Michael R. Villanueva, M.D., and (2) by improperly discrediting Plaintiff's testimony.

### I.    Medical Opinion Evidence

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are

based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**A.   Dr. McMahon**

Plaintiff contends the ALJ improperly rejected the opinion of her treating physician Dr. McMahon.

It appears from the record that Dr. McMahon began treating Plaintiff as early as March 1999.  Tr. 433.

The record includes three letters from Dr. McMahon regarding his opinion as to Plaintiff's ability to work.  On July 15, 2009, Dr. McMahon wrote a letter "To Whom it May Concern" in which he opined Plaintiff "cannot seek or maintain work permanently" due to her "medical conditions."  Tr. 156.  On December 22, 2010, Dr. McMahon wrote another "To Whom it May Concern" letter in which he stated:  "For medical reasons, time loss is authorized from work for [Plaintiff] since February 2010 until further notice.  She is undergoing testing on neck problems that have been ther [*sic*] major reason for her inability to return to gainful employment."  Dr. McMahon also stated Plaintiff's "expected continued work loss is 3-6 months, but this timeline will be more refined with further evaluations and treatment."  Tr. 577.

On July 18, 2011, Dr. McMahon signed a letter from Plaintiff's attorney confirming a conversation they had on July 13, 2011, about Plaintiff's condition.  Tr. 630-31.  In that letter Dr. McMahon states he diagnosed Plaintiff with degenerative disc disease with central canal stenosis and bony changes that are causing compression of the nerves.  Tr. 630.  Dr. McMahon also opined Plaintiff's neck and low-back pain are "primarily responsible for the impairment in her functioning,"

and the "exacerbations of her chronic pain [from] her neck and
low back" that she would experience if she worked full-time
"would cause her to be absent from work more than two days per
month." Tr. 631. Dr. McMahon's notes from July 16, 2011,
similarly summarize his July 13, 2011, conversation with
Plaintiff's attorney. Tr. 697. In those notes Dr. McMahon
stated he had discussed Plaintiff's multiple problems with her
attorney, "including C Spine DDD with Rad that prevent her from
seeking or maintaining work as needs to chamge [*sic*] position
frequently and lay down 2-3x/day and would probably miss at least
2d/month from work due to above" and that the medications
Plaintiff takes for her conditions would affect her ability to
perform her job well. Tr. 697.

The ALJ stated Dr. McMahon provided two opinions (instead of
the three noted above), and the ALJ gave those opinions "limited
weight." The ALJ found Dr. McMahon's July 2011 opinion to be "of
limited value because it is impossible to tell the kind of
inquiries made by the claimant's attorney used to elicit [the]
opinion, which, it is emphasized was then restated by
[Plaintiff's] attorney." Tr. 20.

The ALJ also gave "limited weight" to Dr. McMahon's December
2010 opinion that Plaintiff was not able to work on the grounds
that (1) Dr. McMahon did not identify the basis for his
conclusion and (2) the ALJ perceived a tendency on behalf of

Plaintiff to "become rather exercised [*sic*] when her physicians contradict her notions of the severity of her conditions." Tr. 20. The ALJ suspected Dr. McMahon may have provided his opinion merely because Plaintiff demanded it rather than because it was his true opinion. Tr. 20-21. The ALJ also found Dr. McMahon's opinion "departs substantially from the rest of the evidence of record," but the ALJ does not cite to any such contradictory evidence. Tr. 21.

The ALJ gave "great weight" to the opinions of psychological consultative examiner Michael Villaneuva, Psy.D., and the Disability Determination Services (DDS)[5] psychological consultants Robert Henry, Ph.D., and Richard Alley, M.D. Although the ALJ noted Dr. Villanueva "found that the claimant is capable of light work," the record does not reflect that he did so. The Court notes Dr. Villanueva's opinion, in fact, was based on his examination of Plaintiff on March 9, 2007, more than two years before Plaintiff's alleged onset date of July 14, 2009. The ALJ did not explain why this earlier opinion was entitled to greater weight than the opinions of Dr. McMahon formed after Plaintiff's alleged onset date.

The Court notes the ALJ also gave Dr. McMahon's July 2011

---

[5] DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

opinion limited weight on the grounds that it expressed
Dr. McMahon's conclusions "without identifying their bases."
Tr. 20.  For example, the ALJ took issue with Dr. McMahon's
conclusion about the side effects of Plaintiff's medications
because Dr. McMahon did not "articulate the nature and severity
of these side effects" or state why he believes Plaintiff would
be absent from work more than two days per month.  Tr. 20.  In
some circumstances such reasons may be sufficient for rejecting a
physician's opinion.  In light of the fact, however, that
Dr. McMahon has treated Plaintiff regularly since 1999, provided
multiple opinions that Plaintiff is unable to work, and is the
only treating or examining physician who provided an opinion as
to Plaintiff's ability to work after Plaintiff's alleged onset
date, the Court concludes on this record that the ALJ erred when
he rejected Dr. McMahon's opinion because the ALJ did not provide
legally sufficient reasons supported by the record for doing so.

### B.  Dr. Villanueva

On March 9, 2007, Dr. Villanueva performed a comprehensive
psychodiagnostic examination of Plaintiff at the request of DDS.
Tr. 478.  Dr. Villanueva noted Plaintiff is a "very scattered
historian"; that her affect was "at times bright and, at other
times tearful"; that she moves quickly from topic to topic and
"expands on topics in great detail, though the detail does not
often answer the question at hand"; and she is "somewhat socially

inappropriate." Tr. 480-81.  Dr. Villanueva also noted Plaintiff was "somewhat evasive" when discussing the issue of her substance abuse.  Tr. 481.  Dr. Villanueva noted Plaintiff was extremely disorganized and that it was difficult to obtain information from her or "to organize the interview and mental status exam in any fashion."  Tr. 481.

Dr. Villanueva gave Plaintiff Axis I diagnoses of "Possible Hypomania – bipolar disorder type II", possible generalized anxiety disorder, cannabis abuse, and a possible history of polysubstance abuse.  Tr. 481.  Dr. Villanueva gave Plaintiff an Axis II diagnosis of possible borderline traits.  Tr. 481.

Despite making these diagnoses, Dr. Villanueva stated: "For a more precise diagnoses, one would need serial assessments. There are several possibilities.  It may be that the patient's use of substances is greater than revealed in this interview. She certainly has some traits of individuals who are using methamphetamine or other such stimulants."  Tr. 481. Dr. Villanueva did not provide an opinion as to Plaintiff's ability to work.

Although the ALJ gave "great weight" to the opinion of Dr. Villanueva, the ALJ incorrectly stated Dr. Villanueva concluded Plaintiff was capable of light work and did not provide any further explanation as to what part of Dr. Villanueva's opinion he was giving great weight to or why.  Furthermore, the

ALJ did not discuss Dr. Villanueva's recommendation that Plaintiff should be further evaluated for more precise diagnoses or explain why this recommendation was not followed.

Accordingly, the Court concludes on this record that the ALJ erred when he rejected Dr. Villanueva's opinion because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## II. Plaintiff's Testimony

Plaintiff alleges the ALJ erred by failing to give clear and convincing reasons for rejecting her testimony as to the intensity, persistence, and limiting effects of her symptoms.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,

16- OPINION & ORDER

750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she is unable to work because "all of the time" she experiences pain in her neck that travels down her back.  Tr. 60.  She also stated she gets shooting pain down her hips and has had severe headaches for the past two years.  Tr. 60.  Her pain is exacerbated by pounding, standing, and sitting too long and she cannot sleep through the night.  Tr. 60.  Plaintiff also stated she has pain in her arms that is exacerbated when she holds her arms out for too long or picks up something wrong.  Tr. 52-53.  She needs to lay down at least four times a day for approximately twenty minutes at a time.  Tr. 63.

Plaintiff testified she has two children, ages six and ten, whom she takes care of, and she owns 2.5 acres of property with a goat, a pony, a horse, two dogs, and chickens.  Tr. 53-54.  She stated her husband mainly takes care of the property and animals. Tr. 53-54.  Plaintiff testified the last time she rode a horse was in 2001.  Tr. 56.

Plaintiff stated she was self-employed as a hair dresser,

17- OPINION & ORDER

but she had to close down her business four years earlier because
she experienced too much pain when working.  Tr. 57.  According
to Plaintiff, the pain began after a snowboarding accident in
1999.  Tr. 57.  Plaintiff stated cutting hair was difficult for
her because hands would go numb after keeping them up for more
than fifteen or twenty minutes.  Tr. 59.  According to Plaintiff,
if she had one good day of work, she "paid for it" and would have
to take medication and lay down the whole next day.  Tr. 59.

The ALJ concluded Plaintiff's statements as to the
intensity, persistence, and limiting effects of her symptoms are
not credible to the extent that they are inconsistent with
Plaintiff's RFC on the grounds that the record is not consistent
with her allegations regarding her impairments and symptoms.
Tr. 18.

The ALJ stated Plaintiff indicated in the Function Report
that she had "no genuine problem" preparing meals, performing
household chores, driving a car, and going grocery shopping.
Tr. 19.  This does not appear to be accurate, however, as
Plaintiff stated in the Function Report that she only
occasionally prepares meals and her husband helps with this task
three-fourths of the time; household chores cause her pain; and
she needs help with heavy lifting, vacuuming, laundry, and
grocery shopping.  Tr. 150.

The ALJ also discredited Plaintiff's testimony because of

her daily activities that involve caring for her children and
taking care of her household pets.  Tr. 19.  Plaintiff, however,
testified her husband takes care of the pets and someone helps
her "in general" around the house.  Tr. 50-51.

The ALJ also viewed Plaintiff's testimony "with greater
skepticism" because she has a "willingness to self-diagnose" and
was evasive when asked about her daily activities.  Tr. 19.  The
ALJ also found Plaintiff's daily use of marijuana, particularly
in light of her past conviction for possession of cocaine, may be
hampering her "initiative and ability to obtain and keep
employment, indicating another possible motivation for the
claimant's disability application."  Tr. 19.  In some
circumstances such reasons may provide a basis for viewing a
plaintiff's testimony with some degree of skepticism.  Here,
however, in light of the fact that the ALJ mainly discredited
Plaintiff's testimony based on an inaccurate restatement of the
record, the Court concludes these reasons alone do not establish
a sufficient basis for discrediting Plaintiff's testimony.

Accordingly, the Court concludes on this record that the ALJ
erred when he rejected Plaintiff's testimony without providing
clear and convincing reasons for doing so.

### REMAND

The Court must determine whether to remand this matter for

19- OPINION & ORDER

further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *See, e.g.*, *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

On this record the Court concludes further proceedings are necessary because it is not clear whether the ALJ would have

20- OPINION & ORDER

found Plaintiff can perform other work that exists in significant numbers in the national economy if the ALJ had properly considered the opinions of Drs. McMahon and Villanueva and Plaintiff's testimony.

Based on the foregoing, the Court concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ (1) to reconsider the opinions of Drs. McMahon and Villanueva, (2) to reconsider Plaintiff's testimony, and (3) to consider whether any new findings made by the ALJ alter his evaluation of Plaintiff's RFC or affect his decision as to whether Plaintiff is capable of performing other work that exists in significant numbers in the national economy.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 6th day of February, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

21- OPINION & ORDER